**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

STANLEY B. SMITH, JR.,             :
                                   :
            Plaintiff,             :   Civil No. 07-929 (JBS)
                                   :
       v.                          :
                                   :      **O P I N I O N**
GERARD L. GORMLEY JUSTICE          :
FACILITY, et al.,                  :
                                   :
            Defendants.            :
_____:

**APPEARANCES**:

    STANLEY B. SMITH, JR., Plaintiff, <u>pro se</u>
    #144248
    Atlantic County Justice Facility
    5060 Atlantic Avenue
    Mays Landing, New Jersey 08330

**SIMANDLE**, District Judge

    Plaintiff, Stanley B. Smith, Jr. ("Smith"), currently confined at the Atlantic County Justice Facility at the time he submitted this Complaint for filing, seeks to bring this action <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915, alleging violations of his constitutional rights.  It appearing that plaintiff qualifies to proceed <u>in forma pauperis</u>, the Court will grant plaintiff's application to proceed as an indigent and will direct the Clerk of the Court to file the Complaint without prepayment of fees.  28 U.S.C. § 1915(a), (b).

Having reviewed the Complaint pursuant to 28 U.S.C. § 1915(e)(2) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, the Court concludes that this action should proceed in part.

## I.  BACKGROUND

Smith brings this action, pursuant to 42 U.S.C. § 1983, against the following named defendants: the Gerard L. Gormley Justice Facility; the State of New Jersey; Atlantic County; and the City of Mays Landing.  (Complaint, Caption, ¶ 3B).  The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

On August 3, 2006 and continuing to the present time, Smith was housed in the medical unit at the Gerard L. Gormley Justice Facility in Mays Landing, New Jersey.  Smith alleges that the locking devices on the cell rooms are faulty when the release latch is pushed, making it almost impossible to get in or out in the event of an emergency.  Plaintiff asserts that this problem with the locking devices and latches is a safety and fire hazard. (Compl., ¶ 4 "Statement of Claims").

Smith also complains that inmates confined in the medical unit only have five hours out of their cells compared to the general population, who are permitted to leave their cells for

breakfast until lights out at night. There are no alarms in the medical unit in case of an emergency. Only one guard patrols the unit every half hour. Smith complains that if an emergency occurred between the half hour patrol, there would be no way to alert the staff as to an emergency. (Id.).

Finally, Smith claims that the medical unit is overcrowded with inmates sleeping in "stack-a-bunks" on the floor. There are no emergency exit signs, and the shower facility is not handicap accessible. (Id.).

Smith seeks $3.5 million in damages from each defendant. (Compl., ¶ 5 "Relief").

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, where the plaintiff is proceeding in forma pauperis. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A .

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before

4

dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 and BIVENS LIABILITY

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 alleging violations of his constitutional rights under the Fifth and Fourteenth Amendments.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**IV.   ANALYSIS**

A.   Claims Against the State of New Jersey

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989)(neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983).  Thus, Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

6

Therefore, this action will be dismissed in its entirety against the State of New Jersey.

B.  Claims Against the Jail Facility

Smith also brings this § 1983 action against the jail facility, Gerard L. Gormley Justice Facility.  The claims asserted against the Gerard L. Gormley Justice Facility are subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).  Accordingly, the Complaint will be dismissed in its entirety against this defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

C.  Conditions of Confinement Claim

Having dismissed this action as against defendants, the State of New Jersey and the Gerard L. Gormley Justice Facility, the Court will now review the claims against the remaining defendants, Atlantic County and the City of Mays Landing.[1]  The

---

[1] Generally, local government units and supervisors are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged

---

wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

To establish municipal liability under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990), quoted in Blanche Rd. Corp. v. Bensalem Twp., 57 F.3d 253, 269 n.16 (3d Cir.), cert. denied, 516 U.S. 915 (1995), and quoted in Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 126 (3d Cir. 2000). A plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the plaintiff's injury. Monell, 436 U.S. at 689.

> A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion)). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." [Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).]
>
> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so

8

predominant allegation asserts a claim that the conditions of plaintiff's confinement violated his constitutional rights.

Typically, a conditions of confinement claim in a jail facility is a constitutional attack on the general conditions, practices, and restrictions of pretrial or other detainee confinement.  See Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997).  Pretrial detainees[2] retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether such a detainee has been deprived of liberty without due process, with respect to a conditions of confinement claim, is governed by the standards

---

>     obvious, and the inadequacy of existing practice so
>     likely to result in the violation of constitutional
>     rights, that the policymaker can reasonably be said to
>     have been deliberately indifferent to the need.'"

Natale, 318 F.3d at 584 (footnote and citations omitted).

Here, plaintiff generally asserts that Atlantic County and the City of Mays Landing are liable because they have a duty to make sure that inmates are safe and free from any hazards in the jail facility located in Atlantic County and Mays Landing, and that these municipal defendants have failed to do so.  The Court finds that, on the facts as alleged in the Complaint, if true, plaintiff may be able to show that the policy and practice of the County and municipality defendants in overseeing and maintaining the jail facility was so inadequate as to likely result in the constitutional deprivations asserted.

[2]  It is not clear from the Complaint whether plaintiff is a pretrial detainee or a convicted prisoner awaiting sentencing.  It would appear that plaintiff is likely a pretrial detainee; therefore, the Court will analyze Smith's claims accordingly.

set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520 (1979). <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention

10

facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights.  Id., at 541-43.  The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days.  However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment."  Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983).  There, the United States Court of Appeals

11

for the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

The Third Circuit later held that overcrowded conditions, like double-celling, may amount to a constitutional deprivation if combined with other adverse conditions. Nami v. Fauver, 82 F.3d 63, 66-67 (3d Cir. 1996). In Nami, the inmates were doble-celled, such that one had to sleep on the floor by the toilet. The cells were small with very small windows, so that it was difficult to summon help. As a result, there were rapes, assaults, and psychological stress. The inmates also spent the majority of their day in the cells, and were deterred from visiting doctors. Id. at 65-66.

In an earlier case, Tillery v. Owens, 907 F.2d 418 (3d Cir. 1990), the court found a constitutional violation where the inmates slept on triple celled bunk beds, and the other conditions at the prison included overcrowded spaces in which the inmates spent the vast majority of their time, bad lighting, rampant assault due to under staffing of prison personnel, little

to no cleaning, a major vermin problem, inadequate plumbing, unsanitary and unsupervised showers, inadequate fire safety, and deficient medical and psychiatric treatment.  907 F.2d at 422-24.

Here, at this stage of the proceedings, it would appear that Smith's allegations may be sufficient to state a claim for "punishment" in violation of the Fourteenth Amendment.  Smith claims that inmates are forced to sleep on "stack-a-bunks" on the floor in small cell rooms, there are no emergency alarms, the cell doors have faulty locking devices constituting a fire safety hazard, the shower rooms are not handicap accessible, there is inadequate monitoring of the unit (only one guard doing rounds every 30 minutes), and plaintiff is confined in his cell or room for 17 hours a day.  Moreover, Smith has had to endure these conditions and safety hazards for an extended period of time, since August 2006.  These conditions, especially where they impinge on fire and safety concerns, do not appear reasonably related to a legitimate, non-punitive governmental objective.  Therefore, plaintiff's "conditions" claim will be allowed to proceed against defendants, Atlantic County and the City of Mays Landing, at this time.

D.  Denial of Recreation Claim

Smith alleges that the medical unit inmates are restricted to their rooms for 19 hours each day, leaving him only 5 hours for recreational time per day.  Plaintiff alleges that the

13

general jail population is permitted to leave their cells during most of the day.

The denial of exercise or recreation can result in a constitutional violation.  "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988)(*quoting* Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)); see also Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996)("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long-term segregation."); Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983); Campbell v. Cauthron, 623 F.2d 503, 506-07 (8th Cir. 1980); Kirby v. Blackledge, 530 F.2d 583, 587 (4th Cir. 1976); Loe v. Wilkinson, 604 F. Supp. 130, 135 (M.D.Pa. 1984).  However, the lack of exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened."  Spain, 600 F.2d at 199.  Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

Here, because Smith is likely a pretrial detainee his claim will be examined under the Fourteenth Amendment standard as set forth above in Bell v. Wolfish.  Smith simply alleges that he

only has five hours recreation every day.  He does not allege any harm or injury as a result of this limited recreational time.  Thus, there was no prolonged deprivation of a constitutional magnitude that would suggest that the action by defendants was intended to punish plaintiff, or that it was an exaggerated response to genuine security considerations in a segregated medical unit.  Therefore, this denial of recreation claim will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## V.   CONCLUSION

For the reasons stated above, the Court will dismiss the Complaint in its entirety, as against the defendants, the State of New Jersey, based on Eleventh Amendment immunity, and the Gerard L. Gormley Justice Facility for failure to state a claim upon which relief may be granted.  As to the remaining defendants, Atlantic County and the City of Mays Landing, the Court will dismiss plaintiff's claim alleging denial of recreation, but the unconstitutional conditions of confinement claim will be allowed to proceed at this time.  An appropriate Order follows.

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

DATED:   **March 13, 2007**

15